**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| ANDREW GORDON, TAVIS MCNEIL, DONALD WRIGHTON, NICOLAS COLE, JACOB GRISSON AND DAWN DEWEY, ON BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED, <br><br> Plaintiffs, <br><br> v. <br><br> TBC RETAIL GROUP, INC. D/B/A TIRE KINGDOM, <br><br> Defendant. | CIVIL ACTION NO. 2:14-CV-03365-DCN |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS'**
**MOTION FOR CONDITIONAL CLASS CERTIFICATION**

COMES NOW Defendants TBC Retail Group, Inc., d/b/a/ Tire Kingdom ("Tire Kingdom"), through undersigned counsel, and files its Opposition to Plaintiffs' Motion for Conditional Certification, and in support thereof, would respectfully state as follows.

## I. INTRODUCTORY STATEMENT

Plaintiffs' Complaint essentially alleges that Tire Kingdom failed to pay overtime compensation to Plaintiffs, each former mechanic employees. (Plaintiffs' Complaint, ¶22). Tire Kingdom does not contest this allegation. What Plaintiffs fail to mention, however, is that they – like most mechanics in the industry were paid by commission, and, as such, were each properly classified as exempt from the overtime provisions of

1

the Fair Labor Standards Act, 29 U.S.C. §201 et. seq., under the retail commissioned sales exemption.[1]

To the extent Plaintiffs were not already aware, Tire Kingdom's Answer to Plaintiffs' Complaint provided Plaintiffs with an in-depth description of the commission-based plan Plaintiffs had been paid, (Defendant's Answer, ¶s 16, 19 & 22) and further apprised Plaintiffs that the reason they were not entitled to overtime pay was due to their exempt status under §7(i) of the FLSA.  (Defendant's Answer, ¶s 15, 19, 22, 23, 31 & 52).

Afterwards, Plaintiffs filed their Motion for Conditional Class Certification ("Motion"), but curiously, neither acknowledged Tire Kingdom's classification of Plaintiffs as exempt, nor denied or attacked any aspect of the §7(i) exemption.

Plaintiffs have also given no indication that there are any other current or former mechanics interested in joining their lawsuit anywhere.  Indeed, given that Tire Kingdom employees started to sign mandatory arbitration agreements in October 2013, the pool of individuals who *could* join the lawsuit is limited.  Further, it is noteworthy that of the six named Plaintiffs, five worked at Tire Kingdom stores in or around the city of

---

[1] Section 7(i) of the FLSA, often referred to as the "retail sales" or "commissioned sales" exemption, states in relevant part:

> No employer shall be deemed to have violated [the overtime provisions] of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under the [minimum wage section] of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.

Charleston, South Carolina. Nicholas Cole, who signed the arbitration agreement, worked in Columbia, South Carolina.

In discovery responses sent to Plaintiffs' Counsel last week, Tire Kingdom made Plaintiffs aware of a virtually identical case previously brought against TBC Corporation (Tire Kingdom's parent company) in Richmond, Virginia, also involving mechanics and the application of the §7(i) exemption. (*See*, Tire Kingdom's Answer to Interrogatory No. 14, Ex. 1) [2]. In that case, Judge Henry Hudson granted TBC Corporation summary judgment, stating:

> ". . . the record evidence, even viewed in the light most favorable to the Plaintiffs, demonstrates clearly and convincingly that Defendants' flat rate compensation plan satisfies all the statutory prerequisites for exemption from the overtime requirements under the FLSA pursuant to § 207(i)."

*Herrera v. TBC Corp.*, 18 F.Supp.3d 739, 747 (E.D. Va. 2014).

Tire Kingdom's discovery responses further advised Plaintiffs that in early 2015 the United States Department of Labor, Wage and Hour Division, Ft. Lauderdale District Office completed its investigation of Tire Kingdom's South Florida stores. The investigation resulted in no violations by Tire Kingdom, including those employees classified exempt under the §7(i) commissioned sales exemption. (*See*, Declaration of Brian Maciak, Ex. 2 ¶4) [3].

Cases involving the commissioned sales exemption, by definition, require a week-by-week, Plaintiff-by-Plaintiff examination of hours worked, (and in this case, an additional category of "turned hours" worked), commissions computed and then paid,

---

[2] Defendant's Objections and Answers to Plaintiffs' Interrogatories to Defendant TBC Retail Group, Inc. are included as Exhibit 1.

[3] Declaration of Brian Maciak is included as Exhibit 2.

and whether the commissions paid equal or exceed one and one-half time minimum wage.  Yet the completion of this already fact-intensive examination only determines whether any liability exists - - it does not provide a calculation of damages, which becomes the next intensive individualized computation.  This is why Courts have held that §7(i) cases in particular are not appropriate to class certification.

This Court has discretion whether or not grant conditional class certification. Each FLSA collective action must be looked at on a case-by-case basis for whether class certification is appropriate.  Among the Court's considerations is whether a collective action efficiently uses judicial resources and whether class certification is the superior method for managing the specific case before it.

This case, in several ways, is unique to the garden variety §216(b) collective action under the FLSA.  First, it involves an exemption which requires the very individualized, fact-intensive review unmanageable for collective actions.  Second, with the exception of one member, it currently involves a manageable sized group of Charleston-based former employees.  Third, no throng of mechanics is beating the door down to become involved in this case; indeed, beside the named Plaintiffs, no other former or current Tire Kingdom employee has shown any interest in Plaintiffs' suit. Lastly, Tire Kingdom's commissioned-based pay plan by which Plaintiffs were paid has been specifically reviewed and approved independently by two branches of the government.  It would be the antithesis of judicial economy and superior case management to conditionally certify a class in this case.  Instead, before beginning down the long and expensive road of a collective action, the parties should propose to the Court a new Scheduling Order, fast tracking the filing of dispositive motion in order

for this Court to rule on the overwhelmingly primary issue in this case, whether or not Plaintiffs are exempt.

## II. FACTUAL BACKGROUND

Tire Kingdom provides a wide-range of tire sales and service, as well as automotive repair services to consumers at 186 stores, exclusively in the states of Georgia and Florida.[4]  Tire Kingdom hires mechanics to perform the auto services, and pays them a commission based upon industry established "turned-hours,"[5] rather than by the actual number of hours worked.[6]  These same "turned-hours" simultaneously form the basis of the labor component of the price charged to the customer.  This way, the mechanics are paid for the same number of hours that are charged to the customer. (Maciak Declaration Ex. 2; ¶7).

To calculate the mechanic's commission, Tire Kingdom multiplies the number of turned hours assigned to the task completed by the particular mechanic's "flat rate." The "flat rate" is an hourly pay rate assigned to each mechanic based upon each respective mechanic's level of experience and number of certifications.  Flat rates

---

[4]  On August 20, 2014 when this case was filed, Tire Kingdom's stores totaled 249 across seven states, including South Carolina.  Today, Tire Kingdom has no remaining store in South Carolina.  (Maciak Declaration, Ex. 2¶3).

[5]  Turned hours represent the amount of time the job should take according to published industry standards.  The amount of time the mechanic actually takes to perform the task may be greater or less than the actual turned hours for which s/he is credited for commission pay purposes.  (Maciak Declaration, Ex. 2 ¶5).

[6]  While Plaintiffs are paid commissions based upon "turned hours", Tire Kingdom maintains records of Plaintiffs' actual hours worked in order to ensure that, as required under §7(i), they always minimally receive at least one and one-half times minimum wage for each hour actually worked.  (Maciak Declaration, Ex. 2 ¶6).

therefore range widely, as demonstrated among the six named Plaintiffs.[7] (Maciak Declaration, Ex.2; ¶8).

However, as required by §7(i), in any given week, and based upon the mechanic's actual hours worked, should any mechanic's total commissions not equal one and one-half times the minimum wage, Tire Kingdom supplements the mechanic's pay (referred to as "differential pay") in an amount which brings that mechanic's pay up to the statutorily required amount, or, currently, $11.02 per hour for all hours actually worked in that workweek.  (Maciak Declaration, Ex. 2; ¶10).

For example, assume in a single workweek Plaintiff Gordon actually worked 50 hours and 40 hours were denominated as "turned hours".  Unless his pay falls below one and one-half minimum wage, his commissions for the week would be $720 [40 (turned hours) x $18 (Gordon's flat rate)].  In this example, Gordon's weekly pay far exceeds the statutory minimum, or $551 [50 (actual hours) x (§7(i)'s minimum) $11.02]. However, if the next week Gordon again actually works 50 hours, but only 20 hours are "turned hours", his commissions would be only $360.00 [20 (turned hours) x $18], and therefore not meet the statutory minimum.  Accordingly, in this week, Gordon would receive differential pay in the amount of $191 [$551 (statutory minimum) - $360 (commissions earned)], in addition to his commissions.

## III.  ARGUMENT

## A.    THE CONDITIONAL CERTIFICATION STANDARD

### 1.    The "Similarly Situated" Standard Requires More From This Court Than Rubber Stamp Approval

---

[7]   Plaintiffs' flat rates are as follows:  Andrew Gordon $18.00; Dawn Dewey $18.00; Travis McNeil $23.00; Nicholas Cole $18.00; Donald Wrighton $29.00; and Jacob Grissom $18.00.  (Maciak Declaration, Ex. 2 ¶9).

### a.     Courts Have Used the Traditional Two-Stage Certification Model

In a garden variety § 216(b) collective action, a court will normally apply a two-staged approach for determining whether the named plaintiffs are "similarly situated" to other potential plaintiffs. *Purdham v. Fairfax Cnty. Pub. Sch.*, 629 F.Supp.2d 544, 547 (E.D. Va. 2009). At the first stage, referred to as the "notice" or "conditional certification" stage, a court reviews the pleadings and affidavits to determine whether the named plaintiffs have carried the fairly lenient burden of showing they are similarly situated to other putative class members. *Purdham*, *Id.,* at 547-48. If the court concludes that the proposed class members are similarly situated, the court conditionally certifies the class. *Steinberg v. TQ Logistics, Inc.*, 2011 WL 1335191, at *1 (D.S.C. Apr. 7, 2011).[8] Later, typically after the completion of discovery, the defendant may move to decertify the collective action, pointing to a more developed record to support its contention that plaintiffs are not similarly situated. At this decertification stage, the court applies a more demanding standard to the similarly situated analysis. *Steinberg*, at *2; *Pelczynski v. Orange Lake Country Club, Inc.*, 284 F.R.D. 364, 368 (D.S.C. 2012).

District courts have discretion "in appropriate cases," to grant conditional class certification. *Hoffman-LaRoche,* Inc, 493 U.S. 165, 169 (1989). *Hoffman* instructed that class certification should be employed only when resolving common issues of law and fact arising from the same alleged activity would promote efficiency and judicial economy. *Id.* Accordingly, this Court must balance the putative benefits against any prejudice to Tire Kingdom and any judicial inefficiency that may result from allowing Plaintiffs to proceed collectively. *Vaszlavik v. Storage Technology Corp.*, 175 F.R.D.

---

[8] Unpublished opinions are included as Exhibit 3.

672, 678 (D. Colo 1997).  Indeed, ultimately, the decision whether to proceed as a collective action turns on whether collective action is the superior way of resolving the controversy.  *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F.Supp.2d 1111, 1118 (N.D. Cal. 2011); *West v. Border Foods, Inc.*, 2006 WL 1892527, at *7 (D. Minn. July 10, 2006) (neither the remedial purposes of the FLSA, nor the interests of judicial economy, would be advanced if [the court] were to overlook facts which generally suggest that a collective action is improper); *Freeman v. Wal-Mart Stores, Inc.*, 256 F.Supp.2d 941, 944 (W.D. Ark. 2003) (courts have a "responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation.").

> **b.    More Important is Whether Collective Action is the Superior Alternative**

To achieve collective certification, Plaintiffs must demonstrate that notice is "appropriate".  *MacGregor v. Farmers Ins. Exchange*, 2012 WL 2974679 (D.S.C. July 20, 2012).  In order to be appropriate, Plaintiffs must show a common policy or plan *that violates the law*, and which creates a factual nexus binding the named Plaintiffs and the potential class members together.  *Pelczynski v. Orange Lake Country Club, Inc.*, 284 F.R.D. 364, 368 (D.S.C. 2012) (Emphasis added); and *Mclawhorn v. County of Wayne, North Carolina*, 2014 WL 5810375, at *1 (E.D.N.C. November 7, 2014).  These Plaintiffs clearly cannot do so, as the common commission-based pay plan Plaintiffs must seek to attack is one already adjudged to comply with the FLSA.  *See*, *Herrera*, *supra*.

Moreover, especially in this case, the Court would be placing the cart before the horse if it were to approve class certification at this time based on the mere allegation by the Plaintiffs that their commissioned-based pay plan violated the law.  Indeed, courts will generally not conditionally certify a collective action "simply because

[plaintiffs] claim violations of the law by same employer." *Harris v. Fee Transportation Services, Inc.*, 2006 WL 1994586, at *4 (N.D. Tex. May 15, 2006), citing *Freeman*, at 945. In *Freeman*, the court refused to conditionally certify a class of employees who alleged they were not being paid overtime wages because they were, as in our case before the Court today, misclassified as exempt. *Id.*

### c.    The Court is Not Restricted From Using a Heightened Standard of Review at the Notice Stage if The Court Has Sufficient Information Which Additional Discovery Will Not Effect

Typically, while at this "notice stage", Courts apply the more lenient standard, *Pelczynski*, at 368, Plaintiffs' burden of proof is "not invisible." *Purdham*, 679 F.Supp.2d at 548. This is true because, again, typically, the parties at the notice stage have engaged only in limited discovery, and therefore it is premature to conclude that the evidence is representative of what the plaintiffs would present given further discovery. *Butler* v. *DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 567 (D. Md. 2012).

However, a court can collapse the relatively lenient notice stage analysis with the more stringent post-discovery stage analysis and deny certification out-right. *Purdham*, 629 F.Supp.2d, at 547. Indeed, Courts have collapsed the two stages at the notice stage, and applied an intermediate standard, utilizing a more heightened amount of scrutiny when reviewing a motion for class certification. *MacGregor*, *supra*, at *2; *Davis v. Charoen Pokphand, Inc.*, 303 F.Supp.2d 1272, 1276 (M.D. Ala. 2004) (court applied the more exacting review, as plaintiffs had had an opportunity to conduct discovery with respect to defendant's policies and procedures); and *Holt v. Rite Aid Corp.*, 333 F.Supp.2d 1265, 1274 (M.D.Ala.2004) (considering the defendant's evidence in deciding whether to conditionally certify a FLSA collective action because there was

"fairly extensive evidence on the issue of whether putative class members [were] similarly situated").

Because courts must determine at the notice stage that plaintiffs are both similarly situated to their proposed class *and* that the proposed class is manageable, *Dinkel v. Medstar Health, Inc.*, 880 F.Supp.2d 49, 48 (D.D.C. 2012), citing *Bouthner v. Cleveland Constr., Inc.*, 2012 WL 738578 at *4 (D. Md. March 5, 2012) ("[C]onsideration of issues related to the manageability of a proposed collective action is appropriate at the notice state of a[n] FLSA action."), conducting discovery is not the only reason for applying the higher and more exacting standard.   Instead, whether to apply the heightened standard is guided by the amount of total information available to the court at the notice stage.  *Blaney v. Charlotte-Mecklenburg Hosp, Auth.,* 2011 WL 4351631, at*6 (W.D.N.C. Sept. 16, 2011) (because the "question before the Court remains whether this is an appropriate case for certification . . . [t]his determination is guided by the amount of information available to the Court."), citing *Bouaphakeo v. Tyson Foods, Inc.*, 564 F.Supp.2d 870, 895 (N.D. Iowa 2008) (applying a "common sense" application of the two-step approach by determining "whether *conditional* certification of a collective action is appropriate by evaluation all the facts that have thus far been placed" before the court (emphasis included in the original)).

Indeed, even though the question of decertification is not currently before the Court, the class certification factors used at the second stage of analysis are relevant in assessing the information currently before the Court.  *Pelczynski*, 248 F.R.D. at 368.[9]

---

[9]  The factors courts use in determining whether to decertify a collective action are:  (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations.  *Pelczynski*, 248 F.R.D. at 368.

Otherwise, "it would be a waste of the Court's and the litigant's time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Freeman*, *supra*, at 945.

The information the Court currently possesses is that, in order to recover their sought-after unpaid overtime, Plaintiffs will have to attack and defeat the commissioned-sales exemption Tire Kingdom applied to them, and to do so despite a district court within the Fourth Circuit having, barely a year ago, already adjudged "clearly and convincingly that [TBC Corp.]'s flat rate compensation plan satisfies . . . the exemption from the [FLSA's] overtime requirements . . . pursuant to § 207(i)", not to mention the unblemished results Tire Kingdom received from an often determined and adversarial DOL.  *See*, *Herrera*, 18 F.Supp.3d at 744, 747 (noting that "the Eleventh Circuit attached significant weight to the Field Operations Handbook published by the Wage and Hour Division of the United States Department of Labor").  This information need not be ignored by the Court out of some formulaic need to maintain the more typically used lenient standard.  It is well within this Court's discretion to apply the intermediate level of scrutiny at this stage, as neither the remedial purposes of the FLSA, nor the interests of judicial economy, will be advanced by overlooking information which generally suggests that a collective action is improper.  *West*, *supra*, at *7; *Basco v. Wal-Mart Stores, Inc.*, 2004 WL 1497709 at *5 (E.D. La. July 2, 2004) ("[t]o create a collective action, including the cost associated with that, when a Court is convinced that there is insufficient support for same prior to its certification would be an exercise in futility and wasted resources for all parties involved"); and *Amendola v. Bristol-Myers*

*Squibb Co.*, 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008) ("[W]here a defendant employer shows either that the potential recipients of the notice are not similarly situated to the plaintiff or that it will likely succeed at trial in proving that the employees are not entitled under the FLSA to overtime compensation, a court may refuse to authorize notice or postpone deciding the issue pending further discovery and motion practice.").

This Court should deny conditional certification because Plaintiffs fail to meet their burden of establishing that they are similarly situated to other mechanics working for Defendants and because the likely significant and wasteful cost to the parties, as well as the potential for massive judicial inefficiency outweighs any of the possible benefits for which collection actions were intended.

## 2.    Plaintiffs Cannot Satisfy Their Burden of Showing That There are Others Who Desire to Opt-In

As a part of this Court's analysis for whether to grant class certification, this Court "should satisfy itself that there are other employees . . . who desire to opt-in. *Dyback v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991); *Pelczynski*, *supra*, at 368; ("[E]vidence that other similarly situated individuals desire to opt in to the 'litigation,' therefore is required); *Simmons v. T–Mobile USA, Inc.*, 2007 WL 210008, at *9 (S.D.Tex. Jan.24, 2007) ("[o]thers' interest in joining the litigation is relevant to whether or not to put a defendant employer to the expense and effort of notice to a conditionally certified class of claimants."); *Franco-Hernandez v. S. Valley Fruit & Vegetable, Inc.,* No. 7:14-CV-62 HL, 2015 WL 500828, at *3 (M.D. Ga. Feb. 5, 2015) (the district court is called upon to determine at the notice stage whether there are other employees who wish to opt-in to the action); *Colozzi v. St. Joseph's Hosp. Health Ctr.,* 595 F.Supp.2d 200, 205 n. 5 (N.D.N.Y.2009) ("A plaintiff seeking certification of a

collective action under section 216(b) must also establish that there are similarly situated employees who desire to opt-in and become plaintiffs in the case."); and *Parker v. Rowland Express, Inc.,* 492 F.Supp.2d 1159, 1166 (D.Minn.2007) ("an FLSA plaintiff is not entitled to conditional certification simply to seek out others who might wish to join the action.").   Plaintiffs simply must do more than show the mere existence of other similarly situated persons, because there is no guarantee that those persons will actually seek to join the lawsuit." *Parker*, 492 F.Supp.2d at 1165.

In addition, the mere belief by the named Plaintiffs that other similarly situated mechanics exist, let alone are interested in participating in this lawsuit, is insufficient to justify certification.   *David v. Associated Out-Door Clubs, Inc.*, 2010 WL 1730702 (M.D. Fla. Apr. 27, 2010).   Four of the six named Plaintiffs provided affidavits in support of Plaintiffs' Motion, three of which are nothing more than cut-and-pasted.[10]   Indeed, none of the four affiants provide anything more than vague speculative statements, none of which show how any of the affiants have personal knowledge that any other mechanic anywhere within Tire Kingdom seeks to join their action:

> "Myself and other service technicians were not paid time and half (sic) when we worked over 40 hours, which we did on a regular basis."  (Declaration of Nicholas Cole, ¶ 12).

> "Tire Kingdom employed other mechanics who worked the same or similar hours as me and were compensated under the same compensation plan.  (Declaration of Andrew Gordon, ¶10).

---

[10] Courts have rejected cookie cutter declarations devoid of substance.  *Tussing v. Quality Resources, Inc.*, 2009 WL 4350253 , at *3 (M.D. Fl. Nov. 25, 2009) (plaintiffs' six cookie-cutter affidavits found not substantial and detailed enough to establish conditional certification); *Hampshire v. Port Arthur Indep. Sch. Dist.,* 2006 U.S. Dist. LEXIS 88874, at * 13–14 (E.D.Tex. Dec. 7, 2006) ("[T]he nearly identical statements in the affidavits that affiants have personal knowledge of other potential plaintiffs who are similarly situated are insufficient for the court to find that such plaintiffs exist").

"Tire Kingdom employed other mechanics who worked the same or similar hours as me and were compensated under the same compensation plan. (Declaration of Tavis McNeil, ¶13).

"Tire Kingdom employed other mechanics who worked the same or similar hours as me and were compensated under the same compensation plan. (Declaration of Dawn Dewey, ¶10).

Additionally, each of the affiants only describes his/her own compensation plan. None identify anyone else specifically; some suggest others from their own store. Accordingly, Plaintiffs have failed to offer anything more than conclusory allegations and have not demonstrated any of the required factual nexus binding their claims with other putative opt-in plaintiffs. *Harris*, *supra*, at *4 (court denied plaintiffs' motion for notice to potential plaintiffs at the notice stage because four of the five named plaintiffs submitted affidavits stating only that they observed other employees who were subject to the same allegedly unlawful policies and practices); *Bernard v. Household International, Inc.*, 231 F.Supp.2d 433, 435 (E.D. Va. 2002) (court denied plaintiffs' motion for approval of notice to class at the notice stage because the information provided in plaintiffs' supporting declarations focused only on the acts of their supervisors in their respective offices); *Prince v. Cato Corp.*, 2015 WL 1040713, at *9-10 (N.D. Ala. March 10, 2015) (plaintiffs' motion to conditionally certify and facilitate notice was denied at notice stage because plaintiffs' declarations failed to show how the plaintiffs had personal knowledge of information outside of their stores and amounted to nothing more than speculation and hearsay); and *Rodgers v. CVS Pharmacy*, 2006 WL 752831, at *4 (M.D. Fla. March 22, 2006) ("[Plaintiffs] have failed to identify any other employees who desire to join or who have expressed an interest in joining this action. Plaintiffs' unsupported beliefs and

expectations that others *may* desire to opt in are insufficient to justify certification of a collective action and notice to a potential class".).

The fact that Tire Kingdom employees started to sign mandatory arbitration agreements in October 2013 further undercuts Plaintiff's ability to show opt-ins are available to join this lawsuit.  Indeed, Nicholas Cole, one of the six named Plaintiffs, signed such an agreement.[11]

### 3.    Plaintiffs Fail to Clearly Describe the Potential Class They Seek

In *Prince*, *supra*, the plaintiff, Virginia Prince, brought an action to recover unpaid compensation owed to her "and all current employees and former employees of Cato who are similarly situated to the named plaintiff."  Prince alleged that "Cato has had a uniform policy and practice of consistently requiring its [store managers and acting store managers] to work over 40 hours per week for a salaried amount without overtime compensation."   Nothing more was stated in the plaintiff's motion to facilitate notice describing the proposed class sought.  *Prince*, at *1.

The Court found that "the plaintiff has proposed a class of "all store managers and acting store managers", but quipped with some degree of frustration that, "[a]lthough she is not clear, based on her argument, and the nature of the evidence presented, the court assumes that she means all such person, "nationwide."  The Court went on to state bluntly:  "the failure to clearly describe the potential class is reason enough to deny the motion".  *Prince*, *supra,* at *2, n.1.

Plaintiffs' Motion is much like Ms. Prince's.  It merely states that "Plaintiffs move this Court for authorization to proceed as a collective action for overtime compensation .

---

[11]    Tire Kingdom intends to address Mr. Cole's inappropriate inclusion as a class member in a future motion.

. . on behalf of all current and former Mechanics who worked during the time period beginning. . . ."  This vague description of the proposed class could, as in *Prince*, be interpreted to seek a nationwide class.  While certification as to a single location has been found appropriate by the Fourth Circuit in *Brown v. Nucort Corp.*, 785 F.3d 895, 909 (4th.Cir. 2015), a nation-wide class clearly violates the spirit of the Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011).  Likewise, the result in this case should be as in *Prince* - - denial of Plaintiff's motion to facilitate notice due to the unclear class, combined with the Plaintiffs' speculative declarations, which offered only limited denial of Plaintiffs' motion to facilitate notice due to information about their own stores.

### 4.    Conditional Certification Is Inappropriate Because Liability Is Based On An Individualized, Fact-Intensive Inquiry For Each Plaintiff

Most significantly, conditional certification is inappropriate where, as here, the plaintiffs'' claims require the Court to engage in an individualized, fact-specific inquiry as to *each* plaintiff's or *each* potential class member's claim in order to determine if any liability exists under the FLSA.  *E.g., Myers v. Hertz Corp.*, 2006 U.S. Dist. LEXIS 100597, at *13 (E.D.N.Y. May 18, 2006) ("Many courts [. . .] have declined to find potential plaintiffs similarly situated where liability depends upon such an individualized determination.").  Similarly, as this Court has recently stated, "[n]otice is more likely to be appropriate when . . . the multiple claims do not require substantial individualized determinations for each class member."  MacGregor*, supra* at *2, citing *Purdham*, at 547-49.  *See also, Pelczynski*, 248 F.R.D. 369, n.7 (court denied motion for class certification after determining that "whether any particular plaintiff was owed any overtime in any particular week [would] require a week-by-week and plaintiff-by-plaintiff calculation that takes into account not only the hours actually worked but also the

wages earned that week, including any commissions and bonuses."); *Diaz v. Electronics Boutique of Am., Inc.* 2005 WL 2654270, at *4 (W.D.N.Y. Oct. 17, 2005) (court denied motion for conditional class certification in part because a detailed factual analysis of plaintiffs exempt or non-exempt status would be required); and *Clausman v. Nortel Networks, Inc.*, 2003 WL 21314065 (S.D. Ind. May 1, 2003) (denying collective action certification because the court would have had to determine whether every potential plaintiff was correctly classified as an outside salesman, and thus excluded from the FLSA).

Thus, because of the "highly individualized nature" of claims for overtime involving the § 7(i) exemption, which, in this case, would require a review of *each* class member's actual time records, turned-hours records and pay records – courts have made clear that commissioned employees' claims under § 7(i) cannot proceed as a collective action.

In *Johnson v. TGF Precision Haircutters, Inc.* 2005 WL 1994286 (S.D. Tex. Aug. 17, 2005), the court granted the employer's motion to decertify due to §7(i)'s highly individualized defense, including the requirement for periodic calculations to determine that each class member's total earnings consisted of commissions:

> Functionally, . . . § 7(i) is in fact a highly individualized defense because its application requires week-by-week and other periodic calculations (e.g., not less than monthly on one part of the formula) specific to each individual Plaintiff and his or her particularly circumstances.  The 'regular rate' of pay, for example, 'is a rate per hour, computed for the particular workweek by a mathematical computation in which hours worked are divided into straight time earnings for such hours to obtain the statutory regular rate.'  29 C.F.P. § 770.419 . . . With respect to commissions, § 7(i) also requires the totaling of each particular Plaintiff's commissions over a 'representative period' of not less than one month.  *See* 29 U.S.C. § 207(i).  This 'representative period' is meant to be 'a period which

> typifies the total characteristics of an employee's earning pattern in his current employment situation, with respect to the fluctuations of the proportion of his commission earnings to his total compensation. 29 C.F.R. § 779.417.  The proof required to establish these individualized § 7(i) exemption defenses would become the overwhelming focus of a trial which, to a jury or factfinder, would amount to trials of perhaps as many as 200 individual cases.  Thus, the § 7(i) exemption defense weighs heavily in favor of decertification.

*Id.*, at *6.[12]  The court also noted that the plaintiffs' burden of proof "becomes even greater" when, like the present case, the plaintiffs have individualized and fluctuating payment schemes.  *Id.*, at n. 17.[13]

Similarly, in *Beauperthuy v. 24 Hour Fitness USA, Inc.* 772 F.Supp. 2d 1111, 1126 (N.D. Cal. 2011), the court decertified a collective action involving commissioned employees under § 7 (i).[14] There, the plaintiffs, who were personal trainers, received commissions that varied over the years.  *Id.*  In addition, their payroll records showed that some putative class members received more than 50% of their compensation as commission during some pay periods.  *Id.*  Given these facts, the court held that, "determining whether the § 7(i) defense applies to members of the putative class would require a highly individualized inquiry and could not be accomplished by common

---

[12]  It is worth noting that if the *Johnson* court believed a trial of 200 individual cases amounted to grounds against class certification, certainly the multiple mechanics at Tire Kingdom's remaining 186 stores would simply deluge any court attempting to manage such a case.

[13]  As just one example, the Affidavits of Plaintiffs Cole, Gordon, and McNeil allege that managers would routinely, reduce their "wrench time."  The Affidavit of Plaintiff Dewey contains no such allegation.

[14]  While *Johnson* and *24 Hour Fitness* discuss § 7(i) in the context of a motion to decertify, these cases make clear that commissioned employees' claims under § 7(i) cannot proceed as a collective action because the highly individualized inquiry required for this defense cannot be accomplished through common proof.  Thus, decertification of any conditional class is inevitable.

proof." *Id.* As *Johnson* and *24 Hour Fitness* make clear, the Court will have no choice but to engage in an individualized inquiry with respect to each Plaintiff (and any opt-in Plaintiff) to determine if Defendants violated § 7(i), none of which is sensible or manageable via collective actions.[15]

While consideration of the employer's defenses is more commonly conducted at the second or decertification phase, in certain cases, such as this case before the Court today, the superior use of judicial resources as well as the parties' time and financial costs, is to give consideration at this notice stage, not later, to the inevitable individualized determinations required for each Plaintiff.  Because we know now, without the need of any further discovery, that by the very nature of the commissioned sales exemption, individualized week-by-week, Plaintiff-by-Plaintiff determinations will have to be performed, the Court is now in the position, as it was in *MacGregor*, to apply the intermediate standard and consider all the information before it in this case.

This is the same position the court found itself in *Holt*, *supra.*  There, like here, in order to determine which employees were not exempt and therefore entitled to overtime

---

[15]  Even outside of the § 7(i) context, courts routinely deny § 216(b) conditional certification motions where the alleged FLSA violation rests upon individualized evidence involving each plaintiff.  *E.G., Myers*, 2006 U.S. Dist. LEXIS 100597, at *13 ("Many courts [. . .] have declined to find potential plaintiffs similarly situated where liability depends upon such an individualized determination."); *Basco,* 2004 WL 1497709, at *8 ("Wal-Mart's potential defenses to any alleged FLSA overtime violations will require highly individualized evidence concerning each associate."); *Wynn v. Nat'l Broadcasting Co.*, 234 F. Supp. 2d 1067, 1085 (C.D. Cal. 2002) (declining to certify class where individualized issues, including individualized defenses, would predominate); *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 499 (D. N.J. 2000) (concluding that an exemption inquiry was "extremely individual and fact intensive," and deciding that "the individual nature of the inquiry required make[s] collective treatment improper in this case"); *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D.O.R. 2002) (denying conditional certification where a collective action "would be mired in particularized determinations of liability and damages, rather than collective consideration of common questions of law and fact").

depended on an individual, fact-specific analysis.  The *Holt* court recognized that if it were to conditionally certify the case as a collective action, it would first have to make individualized determinations as to whether or not the plaintiffs and the members of the putative class were exempt, before ever getting to whether any violation of the FLSA existed, let alone any damages.  This the court was unwilling to do, foreseeing that such a process would not benefit either judicial or the parties' economies, as envisioned by the FLSA's collective action procedure.  *Holt*, at 1274-75.

**B.    SHOULD THE COLLECTIVE ACTION BE CONDITIONALLY CERTIFIED, TIRE KINGDOM SUBMITS THAT THE NOTICE PROPOSED BY PLAINTIFF IS IMPROPER.**

Should this Class be conditionally certified (which Tire Kingdom asserts that it should not) Tire Kingdom notes that there are several improvements that need to be made to Plaintiffs' proposed Notice.  Among the changes, the Notice should be modified to conclude a broader description of Defendant's position, closely mirroring the description of the Plaintiffs' allegations.   Prospective Plaintiffs should be told in a separate paragraph that the Court has not yet ruled on Plaintiffs' claims.  Prospective Plaintiffs should be told that if they join the lawsuit they will be bound by any settlement. The Retaliation Section should be amended to make it clear that adverse employment actions must be taken "because" the Plaintiff has exercised his or her rights under the FLSA in order to constitute "retaliation."  In the alternative, the Retaliation Section could be deleted altogether.  Prospective Plaintiffs should be informed that Plaintiffs' counsel, as well as the Plaintiffs as their representatives, may make decisions on their behalf.  In Section 8 of the proposed Notice, contact information for Defendant's counsel has been added.  For the Court's convenience, a redlined version of the proposed Notice as

modified by Tire Kingdom appears attached hereto as Exhibit 4. A finalized copy of the proposed Notice, with Defendant's suggestions added, is enclosed as Exhibit 5.

## VI. <u>CONCLUSION</u>

Applying the foregoing standards, Plaintiffs cannot meet their burden, and Plaintiffs' motion should be denied for three separate reasons:  1) Plaintiffs' Motion either completely overlooked, or simply ignored, the fatal (and incurable) flaw that, as a matter of fact and law, § 7(i) requires a highly individualized calculation which, by its very nature, is not suitable and cannot proceed as a collective action, thus making clear that Plaintiffs are not similarly situated to the purported class; 2) Plaintiffs have failed to demonstrate that there is any interest among other Tire Kingdom mechanics to join their suit; *and* 3) the imprimatur afforded Tire Kingdom's application of the § 7(i) exemption to its mechanics by both Judge Hudson and the Ft. Lauderdale Wage and Hour Division Office of the U.S. Department of Labor.  Each reason individually, let alone collectively, strongly suggests that superior management of this case is for this Court to first rule on any challenge named Plaintiffs have to the commissioned-sales exemption, and then, if still applicable, determine whether conditional class certification is warranted.

Plaintiffs Motion should be dismissed in its entirety and with prejudice.

Dated this the 22nd day of June 2015.

BY:    s/Wade E. Ballard
       Wade E. Ballard
       Federal ID No. 1180
       wballard@fordharrison.com
       Kristin S. Gray
       Federal ID No. 10181
       kgray@fordharrison.com
       FORD**HARRISON**LLP
       100 Dunbar Street, Suite 300
       Spartanburg, SC 29306
       Phone:  (864) 699-1100
       Fax:     (864) 699-1101
       wballard@fordharrison.com
       Attorneys for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing **DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION** has been filed with the Clerk of Court, utilizing the CM/ECF System, which will automatically send e-mail notification of such filing to the following attorneys or parties of record:

Marybeth Mullaney, Esq.
MULLANEY LAW
321 Wingo Way Suite 201
Mount Pleasant, South Carolina 29464
marybeth@mullaneylaw.net

William C. Tucker
TUCKER LAW, PLC
690 Berkmar Circle
Charlottesville, Virginia 22902
billtucker@tuckerlawplc.com

ATTORNEYS FOR PLAINTIFF

Dated this the 22nd day of June 2015.

BY:   s/Wade E. Ballard
      Wade E. Ballard, Esquire

WSACTIVELLP:7684372.1