IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| ANDREW GORDON, TAVIS MCNEIL, DONALD WRIGHTON, NICHOLAS COLE, JACOB GRISSON, AND DAWN DEWEY, *on behalf of themselves and others similarly situated*, <br><br> Plaintiffs, <br><br> vs. <br><br> TBC RETAIL GROUP, INC. d/b/a TIRE KINGDOM, <br><br> Defendant. | No. 2:14-cv-03365-DCN <br><br> **ORDER** |

The following matters are before the court on Andrew Gordon, Tavis McNeil, Donald Wrighton, Jacob Grissom, Dawn Dewey, and Nicholas Cole's (collectively, "plaintiffs") motion for reconsideration, ECF No. 113, of the court's prior order granting in part and denying in part TBC Retail Group, Inc.'s ("defendant") motions to compel arbitration and motion for summary judgment, ECF No. 112. For the reasons set forth below, the court denies the motion.

**I. BACKGROUND**

On August 20, 2014, plaintiffs filed the instant action on behalf of themselves and "all other similarly situated employees." Compl. at ¶ 2. Plaintiffs allege that defendant violated the minimum wage and overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), by utilizing a compensation plan that did not provide plaintiffs one and one-half times their regular rate of pay when they worked more than forty hours in a workweek. Id. at ¶ 23.

1

Cole was employed by defendant as a mechanic at the Tire Kingdom located at 7201-900 Two Notch Road in Columbia, South Carolina, from approximately May 2013 until April 2014. Id. ¶ 1. Between February 2013 and October 2013, defendant drafted and developed a Mutual Agreement to Arbitrate Claims and Waiver of Class/Collective Actions (the "Agreement"). ECF No. 32-2, Filoon Dec. ¶¶ 2–8; ECF No. 81-2, Third Filoon Dec. ¶¶ 2–4. Defendant finalized the Agreement in October 2013, and began requiring all new hires to sign the Agreement as of October or November 2013. Filoon Dec. ¶¶ 3, 4. Between October 2013 and March 2014, defendant made the Agreement available for "electronic signature" through the employee portal—a password protected, computer-based document system.[1] Id. ¶ 5; see also ECF No. 39-1, Second Filoon Dec. ¶ 9 (describing access and navigation of the employee portal). In March 2014, defendant circulated a company-wide communication notifying its employees that the Agreement and a related memorandum (the "Memorandum") were available via the employee portal. Filoon Dec. ¶¶ 7, 8; ECF No. 33-4, Memorandum 2.

The Memorandum explained that the portal now allowed employees to "review and acknowledge [defendant's] policies, processes, and documents," and that this feature was being implemented with two important documents, one being the Agreement. Id. The Memorandum further explained that the Agreement was "a contract" intended "to allow any [employee] to bring any legal claim(s) against [defendant] in a quicker, less formal, and typically less expensive forum than the

---

[1] The employee portal also appears to have been used by employees to record their time and the work they performed. See ECF No. 36-1, Cole Dec. ¶ 6.

traditional filing of a lawsuit in court." Id. All employees hired before October 15, 2013, were "required to acknowledge" the Agreement no later than Friday March 21, 2014. Id.

The Agreement provides that, except in certain circumstances not applicable here,

> [A]ny and all disputes, claims, complaints or controversies ("Claims") between you and TBC Corporation and/or any of its parents, subsidiaries, affiliates, agents, officers, directors, employees and/or any of its benefit plans, benefit plan fiduciaries, sponsors or administrators (collectively and individually the "Company"), that in any way arise out of or relate to your employment, the terms and conditions of your employment, your application for employment and/or the termination of your employment will be resolved by binding arbitration and NOT by a court or jury. As such, the Company and you agree to forever waive and relinquish their right to bring claims against the other in a court of law.

ECF No. 33-3, Arbitration Agreement. The final page of the Agreement informs the reader as follows:

> YOUR SIGNATURE BELOW ATTESTS TO THE FACT THAT:
>
> 1. YOU HAVE READ, UNDERSTAND, AND AGREE TO BE LEGALLY BOUND TO ALL OF THE ABOVE TERMS.
>
> 2. YOU ARE SIGNING THIS AGREEMENT VOLUNTARILY.
>
> 3. YOU ARE NOT RELYING ON ANY PROMISES OR REPRESENTATIONS BY THE COMPANY EXCEPT THOSE CONTAINED IN THIS AGREEMENT.
>
> 4. YOU UNDERSTAND THAT BY SIGNING THIS AGREEMENT, YOU ARE GIVING UP THE RIGHT TO HAVE CLAIMS DECIDED BY A COURT OR JURY.
>
> 5. YOU HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH PRIVATE LEGAL COUNSEL AT YOUR EXPENSE.

Id.  Directly below this language, the Agreement contains signature blocks for both the "Applicant/Employee" and the "Company."  Id.

However, employees were not asked to "sign" or "execute" these signature blocks; instead, employees would "acknowledge" the Agreement by entering their employee number and the last four digits of their social security number into a field located on a separate portion of the Agreement's signature page.  See Second Filoon Dec. Ex. A, 13–14.  This field appeared below a prompt which stated:  "I, _____, hereby certify and affirm that I have read the Mutual Agreement to Arbitrate.  Please enter your Employee Number and last four digits of your Social Security Number as your electronic signature."  Id.  Defendant has produced records indicating that numerous opt-in plaintiffs,[2] as well as Cole, electronically "acknowledged" the Agreement in this manner.  See Third Filoon Dec. ¶ 12; ECF Nos. 33-2, 33-3, Attachments to Third Filoon Dec. (collecting signature pages, confirmation screen shots, and summary charts of employees who filled out acknowledgment field); ECF No. 33-5 (confirmation screenshot of Cole's acknowledgment, dated March 24, 2014).  Cole, for his part, claims that he "does not recall" ever doing so.  Cole Dec. ¶ 3.

Only then-current employees accessed the Agreement through the employee portal.  The process was significantly different for new hires and rehires.  These employees "signed" the Agreement through an "electronic onboarding process"

---

[2] Defendant has produced such evidence with respect to both opt-in plaintiffs who filed a consent form before the scheduled deadline, see Third Filoon Dec. ¶ 12, and opt-in plaintiffs who filed late consent forms, see ECF No. 88-2, Fourth Filoon Dec. Ex. 1 (providing summary chart).

known as the "Kronos System." Fifth Filoon Dec. ¶ 3. This system required newly hired or rehired employees to log in using their name and portions of their social security number. Id. The employees then agreed to a block of text labeled "e-Signature Acceptance," which stated that the employee agreed to "use the electronic click as [his or her] 'written' signature." Id. Attach. 22. The employee was then required to view a series of documents, including the Agreement, and "sign" each document by "clicking" an icon labeled "Sign." Id. After the employee provided this electronic signature, a message appeared saying that the document was now "signed," and giving the date and time of the signature. Id. ¶ 4. Employees could not complete the hiring process without "signing" each document.[3] Id.

On September 30, 2015, the court granted plaintiffs' motion for conditional class certification. Defendant filed a motion to compel arbitration against Cole on August 3, 2015, well before the opt-in period began. Plaintiffs filed a response to this motion on August 26, 2015, and defendant filed its reply in support on September 8, 2015. On March 7, 2016, defendant filed a second motion to compel arbitration against all opt-in plaintiffs who signed the Agreement and asked the court to stay a scheduled hearing on its first motion to compel arbitration, until both matters could be heard together. Defendant then filed a motion for summary judgment on April 22, 2016. Plaintiffs responded to the second motion to compel arbitration on April 29,

---

[3] The conflicting verbiage used in the employee portal and Kronos System is a potential source of confusion when discussing these motions. Therefore, the court will use quotation marks only when referring specifically to the act of either "acknowledging" the Agreement through the employee portal or "signing" the Agreement through the Kronos System. When referencing the concept signatures or the act of signing a document, generally, quotation marks will be omitted.

2016. Plaintiffs then filed a motion for the joinder of additional parties on May 6, 2016. On August 11, 2016, the court entered an order on these motions, denying the motion to compel Cole to arbitrate, and denying in part and granting in part the motion to compel arbitration for all other opt-in plaintiffs who signed the arbitration agreement. ECF No. 112. Specifically, the court granted defendant's motion as to all relevant opt-in plaintiffs except (1) those who electronically signed the Agreement through the employee portal, rather than the Kronos system, and who left their employment with defendant shortly thereafter; and (2) those who have submitted sworn affidavits claiming that their supervisors frequently accessed their employee portals and completed required tasks "for them." The court decided it would hold an evidentiary hearing on the issue of whether Cole and the other opt-in plaintiffs agreed to be bound by the Agreement and allow the parties to conduct limited discovery in connection with that hearing. The court granted in part and denied in part the motion for summary judgment and the motion for joinder.

On January 26, 2017, Gordon filed a motion for reconsideration of the court's order. ECF No. 113. On February 9, 2017, defendant filed its response in opposition. ECF No. 114. On February 16, 2017, Gordon filed his reply in support. ECF No. 115. On September 13, 2017, the court stayed the case, pending the outcome of <u>Epic Systems v. Lewis</u>, Docket No. 16-285, which was about to be heard before the Supreme Court. On May 31, 2018, defendant filed a supplemental response to the motion to reconsider, in light of the Supreme Court's ruling in <u>Epic Systems</u>. ECF No. 129. On June 7, 2018, plaintiffs also filed a supplemental reply in support of the

motion to reconsider. ECF No. 131. This motion has been fully briefed and is ripe for the court's review.

## II. STANDARDS

### A. Rule 59(e)

Federal Rule of Civil Procedure 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." While Rule 59(e) does not supply a standard to guide the court's exercise of its power to alter or amend, the Fourth Circuit has recognized that a court may grant a Rule 59(e) motion "only in very narrow circumstances: (1) to accommodate an intervening change in controlling law, (2) to account for new evidence not available at trial, or (3) to correct a clear error of law or prevent manifest injustice." Hill v. Braxton, 277 F.3d 701, 708 (4th Cir. 2002). Rule 59(e) motions may not be used to make arguments that could have been made before the judgment was entered. See Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998). Moreover, "[a] party's mere disagreement with the court's ruling does not warrant a Rule 59(e) motion, and such a motion should not be used to rehash arguments previously presented or to submit evidence which should have been previously submitted." Sams v. Heritage Transp., Inc., No. 2:12-cv-0462, 2013 WL 4441949, at *1 (D.S.C. August 15, 2013).

Rule 59(e) provides an "extraordinary remedy that should be used sparingly." Pac. Ins. Co., 148 F.3d at 403 (internal citation omitted); Wright v. Conley, No. 10-cv-2444, 2013 WL 314749, at *1 (D.S.C. Jan. 28, 2013). Whether to alter or amend a

7

judgment under Rule 59(e) is within the sound discretion of the district court.  Bogart v. Chapell, 396 F.3d 548, 555 (4th Cir. 2005).

**B.  Rule 54(b)**

Federal Rule of Civil Procedure 54(b) states, in relevant part, that

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

A "judgment," within the meaning of Rule 54, "includes a decree and any order from which an appeal lies." Fed. R. Civ. P. 54(a).  A motion brought under Rule 54(b) is judged by similar standards as a motion brought under Rule 59(e), which may only be granted for the following reasons:  "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice."  Grayson Consulting, Inc. v. Cathcart, No. 2:07-cv-00593-DCN, 2014 WL 587756, at *1 (D.S.C. Feb. 14, 2014) (quoting Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998)); Slep-Tone Entm't Corp. v. Garner, 2011 WL 6370364, at *1 (W.D.N.C. Dec. 20, 2011).

### III.  DISCUSSION

Plaintiffs' motion for reconsideration only asks the court to reconsider its decision to compel certain plaintiffs to proceed with their claims in arbitration.  Plaintiffs point to a decision from the National Labor Relations Board ("NLRB"), issued after the court's ruling on the motion to compel arbitration, that found that the class and collective action waiver in defendants' arbitration agreement is unenforceable because it violates the National Labor Relations Act ("NLRA").

Plaintiffs argue that this NLRB ruling qualifies as "an intervening change in controlling law" and as "new evidence not [previously] available" under Rule 54. While the NLRB decision might otherwise have been persuasive, its usefulness for the plaintiffs is eviscerated by the Supreme Court's recent decision in Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1626 (2018). In Epic Systems, the Supreme Court upheld the validity of class and collection action waivers in arbitration agreements, finding that they do not violate the NLRA, but are instead valid contractual provisions under the Federal Arbitration Act.

In support of its holding, the Court discussed how the FLSA does not prohibit agreements for individualized arbitration or invalidate class / collective action waivers:

> The employees' underlying causes of action involve their wages and arise not under the NLRA but under an entirely different statute, the Fair Labor Standards Act. The FLSA allows employees to sue on behalf of "themselves and other employees similarly situated," 29 U. S. C. §216(b), and it's precisely this sort of collective action the employees before us wish to pursue. Yet they do not offer the seemingly more natural suggestion that the FLSA overcomes the Arbitration Act to permit their class and collective actions. Why not? Presumably because this Court held decades ago that an identical collective action scheme (in fact, one borrowed from the FLSA) does not displace the Arbitration Act or prohibit individualized arbitration proceedings. Gilmer v. Interstate/Johnson Lane Corp., 500 U. S. 20, 32 (1991) (discussing Age Discrimination in Employment Act). In fact, it turns out that "[e]very circuit to consider the question" has held that the FLSA allows agreements for individualized arbitration. Alternative Entertainment, 858 F. 3d, at 413 (opinion of Sutton, J.) [ ]. Faced with that obstacle, the employees are left to cast about elsewhere for help. And so they have cast in this direction, suggesting that one statute (the NLRA) steps in to dictate the procedures for claims under a different statute (the FLSA), and thereby overrides the commands of yet a third statute (the Arbitration Act).

Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1626 (2018).

Prior to Epic Systems, the Fourth Circuit had also explicitly found that courts may not alter an "otherwise valid arbitration agreement[] by applying the doctrine of unconscionability to eliminate a [contract] term barring classwide procedures." Muriithi v. Shuttle Exp., Inc., 712 F.3d 173, 180–81 (4th Cir. 2013); see also Adkins v. Labor Ready, Inc., 303 F.3d 496, 499 (4th Cir. 2002) (finding "no suggestion in the text, legislative history, or purpose of the FLSA that Congress intended to confer a nonwaivable right to a class action under that statute."); Carmax Auto Superstores, Inc. v. Sibley, 215 F. Supp. 3d 430, 435–36 (D. Md. 2016) (acknowledging the "strong federal presumption in favor of arbitration agreements and the Fourth Circuit's holding that class action waivers are not incompatible with the FAA's savings clause on the basis of unconscionability").

In the current matter, there is nothing in the language of the class / collective action waivers to indicate that they are invalid or unenforceable. Thus, the NLRB's decision regarding defendants' arbitration agreements does not provide a sufficient basis for the court to reconsider its prior order compelling certain plaintiffs to arbitration.

## IV.  CONCLUSION

For the foregoing reasons, the court **DENIES** the motion for reconsideration and lifts the stay on this case.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**July 19, 2018
Charleston, South Carolina**