# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| ANDREW GORDON, TAVIS MCNEIL, DONALD WRIGHTON, NICHOLAS COLE, JACOB GRISSON, AND DAWN DEWEY, *on behalf of themselves and others similarly situated*,<br><br>Plaintiffs,<br><br>vs.<br><br>TBC RETAIL GROUP, INC., *d/b/a* TIRE KINGDOM,<br><br>Defendant. | No. 2:14-cv-3365-DCN<br><br>**ORDER** |

This matter is before the court on Andrew Gordon, Tavis McNeil, Donald Wrighton, Nicholas Cole ("Cole"), Jacob Grisson, Dawn Dewey, and others similarly situated's (collectively "plaintiffs") motion to strike, ECF No. 161. For the reasons set forth below, the court denies plaintiffs' motion to strike.

### I. BACKGROUND

Plaintiffs were employed by defendant TBC Retail Group, Inc., d/b/a Tire Kingdom ("TBC") as mechanics in TBC's South Carolina stores. Compl. ¶ 1. Plaintiffs and other mechanics employed by TBC during the relevant time period were responsible for inspecting, diagnosing, repairing, and servicing automobiles. Id. ¶¶ 13–14. All mechanics employed by TBC during the relevant time period were, and continue to be, paid pursuant to the same compensation plan. Id. ¶ 16; Answer ¶¶ 15, 16, 19, 22, 23, and 31. Under this plan, a mechanic's total compensation is composed of two basic components. First, each mechanic is paid an amount determined by multiplying the

1

particular mechanic's "flat rate"—an hourly pay rate assigned to each mechanic based on that mechanic's particular skill, experience, and certifications—by the mechanic's "turned hours"—a pre-established amount of time designated by TBC for each mechanical task—for all tasks completed by the mechanic during the relevant pay period. Answer ¶ 16; ECF No. 6 at 4. Thus, this "turned hours" component of a mechanic's compensation ("Turned Hours Pay") does not account for the actual time spent working on a particular task or during the pay period overall. Id. at 2. Instead, Turned Hours Pay is based exclusively on the number of tasks completed and the pre-assigned "turned hours" for such tasks. Id. at 5–6. The same measure of "turned hours" used to form a mechanic's Turned Hours Pay for a particular task is used as the basis for the labor costs charged to the customer for that task, though the rates paid by the customers are, of course, greater than mechanics' "flat rates." Id. at 5.

When the amount of a mechanic's Turned Hours Pay earned over a given pay period is less than one and one-half times the statutory minimum wage multiplied by the mechanic's actual hours worked during the same period, TBC pays a supplemental amount, referred to as "differential pay." Answer ¶ 19; ECF No. 6 at 6. This "differential pay" is set at whatever amount is needed to render the mechanic's total compensation—i.e. Turned Hours Pay plus "differential pay"—equal to $11.02 per hour for all actual hours worked during the period. Answer ¶ 19; ECF No. 6 at 6. As a result, if a mechanic's "turned hours" fall below a certain percentage of their actual hours, TBC compensates the mechanic as if they earned a straightforward wage of $11.02 per hour. This "differential pay" is designed to ensure that mechanics always earn at least one and

one-half time the statutory minimum wage for all actual hours worked.  Answer ¶ 19; ECF No. 6 at 6.

On August 20, 2014, plaintiffs filed their complaint against TBC for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.  Specifically, plaintiffs accused TBC of violation of the overtime requirements as stated in 29 U.S.C. § 207(a).  On September 30, 2015, the court granted plaintiffs' motion for conditional class certification pursuant to the collective action provisions of 29 U.S.C. §216(b).  ECF No. 40.  On August 11, 2016, the court entered an order on several motions:  denying TBC's motion to compel Cole to arbitrate, denying in part and granting in part the TBC's motion to compel arbitration for all other opt-in plaintiffs who signed the arbitration agreement, granting in part and denying in part TBC's motion for summary judgment, and granting in part and denying in part plaintiffs' motion for joinder ("multi-motion order").  ECF No. 112.  In denying part of TBC's motion for summary judgment, the court stated that at that time it was "not in any position to grant defendant's motion for summary judgment on the issue of willfulness" because "a significant amount of discovery remains."  Id. at 39–40.  On September 13, 2017, the court stayed the case, pending the outcome of Epic Systems v. Lewis, Docket No. 16-285, which was about to be heard before the United States Supreme Court.  ECF No. 118.  On July 18, 2018, the court issued an order denying the plaintiffs' motion to reconsider the multi-motion order and lifting the stay.  ECF No. 133.

On November 5, 2019, TBC's Senior Vice President and Chief Human Resource Officer Terri Hoskins ("Hoskins") was deposed as TBC's Rule 30(b)(6) designee.  ECF 116-1 ("Hoskins 2019 Depo").  On January 17, 2020, Hoskins was again deposed.  ECF

No. 152-11 (together with Hoskins 2019 Depo, "Hoskins Depos"). On February 7, 2020, TBC filed a motion for summary judgment and decertification. ECF No. 152. On the same day, plaintiffs also filed a motion for summary judgment. ECF No. 153. Each of the parties' motion for summary judgment asked the court to rule in their favor regarding whether the TBC method of compensation is a bona fide commission plan under the FSLA—and if so, whether it is exempted from overtime by 29 U.S.C. § 207(i) ("Section 7(i)"). ECF No. 152-1 at 27; ECF No. 153 at 2. In furtherance of their argument that TBC does not have a bona fide commission plan, plaintiffs asserted TBC never established a proper representative period as required by the regulations governing Section 7(i). ECF No. 153 at 2 (quoting 29 C.F.R. § 779.417(d)). In TBC's response to plaintiff's motion for summary judgment, filed on February 28, 2020, TBC stated that it "uses a designated one-year representative period for reviewing mechanics' compensation under the bona fide Section 7(i) pay plan." ECF No. 157 at 11. To verify its use of a one-year representative period, TBC submitted a declaration given by Hoskins, whereby she attested to TBC's use of a one-year representative period. ECF No. 157-1 ("Hoskins first declaration").

On February 28, 2020, plaintiffs responded to TBC's motion for summary judgment, ECF No. 156, which TBC replied to on March 6, 2020, ECF No. 159. In their reply, TBC submitted a second declaration given by Hoskins, whereby Hoskins again attested to TBC's use of a one-year representative period. ECF No. 159-1 (together with Hoskins first declaration, "Hoskins declarations"). On March 6, 2020, plaintiffs replied to TBC's response to their motion for summary judgment together with a motion to strike the Hoskins declarations. ECF No. 160. On March 18, 2020, plaintiffs refiled their

motion to strike as a separate motion. ECF No. 161.[1] On March 20, 2020, TBC responded to plaintiffs' motion to strike, ECF No. 162. On April 1, 2019, the court held a hearing on plaintiff's motion to strike. ECF No. 165. After the hearing, the court asked the parties to submit supplemental briefing and documents regarding discovery requests and questions asked in the Hoskins Depos. On April 2, 2020, both parties submitted the requested documentation. This motion has been fully briefed and is now ripe for the court's review.

## II.  STANDARD

### A.  Motion to Strike

Rule 12(f) provides:

The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

    (1) on its own; or

    (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f). Motions to strike "are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." Waste Mgmt. Holdings v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001) (internal citations and quotations omitted). Furthermore, motions to strike pursuant to Rule 12(f) are directed only to pleadings. According to Rule 7, a document is a pleading only if it corresponds in one of the following categories: complaint, answer to complaint, answer to a counterclaim, answer to a crossclaim, third-

---

[1] ECF No. 160 and ECF No. 161 are the same document.

party complaint, answer to a third-party complaint, and a reply to an answer. Fed. R. Civ. P. 7(a).

### III.   DISCUSSION

**A.  Motion to Strike**

Plaintiffs accuse TBC of violating the overtime requirements of the FLSA. ECF No. 1 at 5–6 (citing 29 U.S.C. 207(a)). An employer can be exempt from the overtime requirements in § 207(a) if it meets the requirements set forth in Section 7(i). Section 7(i) states:

> No employer shall be deemed to have violated subsection (a) by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

29 U.S.C. 207(i). The regulations that apply to Section 7(i) requires TBC to choose "an appropriate representative period or a formula for establishing such a period" and that choice "must be designated and substantiated in the employer's records." 29 C.F.R. § 779.417(d). A representative period must be longer than one month but cannot exceed one year. 29 C.F.R. § 779.417(d). Plaintiffs argue that the court should grant its motion to strike the Hoskins declarations because "TBC only just now decided that their representative period is one year so that they can argue to the Court that they meet the requirements that their pay plan is a bona fide commission and have acted in good faith," the court should strike the Hoskins declarations under Rule 12(f) or in the alternative

under Rule 56(c)(4).  ECF No. 161 at 2, 4–5.  TBC contends that because motions to strike pursuant to Rule 12(f) are not available to strike material set forth in declarations, and because the Hoskins declarations meet the standards under Rule 56(c)(4), the court should deny plaintiffs' motion to strike.  ECF No. 162 at 4–9.

As previously stated, motions to strike pursuant to Rule 12(f) are directed only to pleadings.  A declaration is not a pleading.  Edwards v. Hooks, 2019 WL 1454203, at *11 (W.D.N.C. Apr. 2, 2019); see Soutter v. Equifax Info. Servs. LLC, 299 F.R.D. 126, 133 (E.D. Va. 2014) (holding "Rule 12(f) is not applicable here [in a motion to strike] because Johnson's affidavit is not a pleading"); Warren v. Tri Tech Labs., Inc., 2013 WL 6147680, at *3 (W.D. Va. Nov. 22, 2013) ("[T]he motion to strike is procedurally improper, as the affidavit is not a 'pleading' as defined in Rule 7(a) of the Federal Rules of Civil Procedure. Only material included in a 'pleading' may be subject to a Rule 12(f) motion to strike; thus, a party may not attack motions, briefs, memoranda, objections, and affidavits with this motion."); see also Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983) ("Under the express language of the rule, only pleadings are subject to motions to strike.").  Plaintiffs seek to strike the Hoskins declaration which are not pleadings, and are therefore not subject to being stricken under Rule 12(f).

Plaintiffs' contentions that the court should grant their motion to strike because the Hoskins declarations fail to meet the standards under Rule 56(c)(4) are also unavailing.  Because the Hoskins declarations were submitted in opposition to a motion for summary judgment, they must comply with the requirements of Rule 56(c)(4) of the Federal Rules of Civil Procedure.  Evans v. Techs. Applications & Serv. Co., 80 F.3d

954, 962 (4th Cir. 1996).[2] In order to be in compliance with Rule 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Under this standard, any and all portions of the declaration that do not to conform with the requirements set forth in Rule 56(c)(4) may be subject to a motion to strike. See Evans, 80 F.3d at 962 (holding that the district court properly struck those sections of an affidavit that to be conclusory, hearsay, irrelevant, or not based on personal knowledge).

      The Hoskins declarations clearly state that Hoskins is relying on personal knowledge, setting out facts that would be admissible, and shows that Hoskins, as Senior Vice President and Chief Human Resource Officer of TBC, is competent to testify on the matters stated in the Hoskins declarations. ECF Nos. 157-1; 159-1; see Nader v. Blair, 549 F.3d 953, 963 (4th Cir. 2008) ("It is well established that employees who are familiar with the record-keeping practices of a business are qualified to speak from personal knowledge, and affidavits sworn by such employees constitute appropriate summary judgment evidence."). Plaintiffs put forth no evidence to establish otherwise. Instead, plaintiffs prominently rely on Soutter to support their proposition that declarations from

---

[2] Evans discusses the standard for compliant declarations of former Rule 56(e) that are now set forth in Rule 56(c)(4). See Whittaker v. Morgan State Univ., 524 F. App'x 58, 60 (4th Cir. 2013) (citing Evans as support for a discussion concerning the affidavit standards of Rule 56(c)(4)).

30(b)(6) corporate designees do not meet the criteria set forth in Rule 56(c)(4).[3] ECF No. 161 at 5–7 (citing Soutter, 299 F.R.D. at 132.)

The facts which led the court to grant the motion to strike in Soutter are not present in this instance. In Soutter, the affiant stated unequivocally in his deposition that he lied in his affidavit when he claimed to have personal knowledge of the conduct and actions to which he attested. 299 F.R.D. at 132–33 ("He swore that what he said in the matters to which he testified [to in his affidavit] were based on his personal knowledge. In his deposition, Johnson confessed that was not so."). The court found striking the affidavit was the appropriate sanction because the affiant lacked personal knowledge and lied about having personal knowledge. Id. at 133 ("Either reason alone or both taken together require that the affidavit not be considered. . . ."). Here, Hoskins made no such confession of lying under deposition nor have plaintiffs provided a scintilla of evidence that Hoskins does not have personal knowledge about the matters contained in the Hoskins declarations.

Plaintiffs contend that Hoskins's failure to reveal TBC's representative period for the purposes of satisfying Section 7(i) in her prior depositions is tantamount to bad faith. ECF No. 161 at 4. However, Hoskins is under no obligation to answer questions that

---

[3] Plaintiffs cite only one other case from within this circuit to support their motion to strike the Hoskins declarations under Rule 56(c)(4), Sutton v. Roth, LLC, 361 F. App'x 543, 550 n.7 (4th Cir. 2010). ECF No. 161 at 6. Plaintiffs concede that the Sutton court reached no conclusions as to the affidavit in question, and merely commented that affiant's personal knowledge was "questionable" because it was "based on review of the files rather than direct, personal knowledge of the underlying facts." Id. (quoting Sutton 361 F. App'x at 550 n.7). Even assuming the Sutton dicta were precedent, the Hoskins declarations clearly state that the testimony is based on Hoskins' personal knowledge, and plaintiffs provided no evidence to the contrary. ECF Nos. 157-1; 159-1. All other cases cited by plaintiffs are from outside this circuit and are otherwise unpersuasive.

were not asked by plaintiffs' counsel during the deposition. TBC contends that if plaintiffs had asked, "Hoskins would have stated, as she did in her declaration that the Company audits its pay plan on an annual basis using a one-year designated representative period." ECF No. 159 at 13, n. 6. At the hearing, the court requested plaintiffs produce any documents that show plaintiffs questioned Hoskins specifically about the representative period. In response, plaintiffs produced excerpts from Hoskins 2019 Depo. ECF 116-1. In the excerpts provided to the court, Hoskins was asked by plaintiffs' counsel, "Can you tell me about that [Section 7(i)] policy?" Hoskins 2019 Depo. 14:5. Hoskins responded:

> That policy actually always falls in line with the 7(i) exemption, which is ensuring that all of our employees are paid at -- number one, which is they work in our retail and service establishments, so no one else qualifies; secondly, that we pay them at least time-and-a-half of the minimum wage. And, third, that at least 50% of their compensation comes from the commission basis.

Hoskins 2019 Depo. 14:6–14. Plaintiffs' counsel later states her intention to "cover that a little bit more," but plaintiffs provide no further testimony from Hoskins nor questions to Hoskins about TBC's representative period. Hoskins 2019 Depo 14:15–16. Plaintiffs provided the court with no other evidence of direct questioning to Hoskins regarding TBC's representative period. The court does not find that such questioning constitutes asking a direct question about TBC's representative period. To the extent that plaintiffs contend Hoskins' failure to answer a question not asked by plaintiffs when being deposed constitutes bad faith or that Hoskins lacked personal knowledge, the court rejects that argument. Plaintiffs provided the court with no evidence that Hoskins was directly asked by plaintiffs what is TBC's representative period for the purposes of compliance with Section 7(i), that she lacked personal knowledge of TBC's representative period for the

purposes of compliance with Section 7(i), or that she was being untruthful in her depositions or declarations. As such, the court cannot grant plaintiffs relief under Rule 56(c)(4).

Plaintiffs also submitted the TBC Employee Handbook as evidence that TBC has obfuscated when previously asked about the representative period for the purposes of satisfying Section 7(i). ECF No. 160-3. TBC disclosed the TBC Employee Handbook based on a request for production of any and all employee handbooks, personnel policies, other documents that related to TBC's compensation policies. ECF No. 160-2 at 4. The court finds it reasonable that a handbook handed out to all employees that includes dress code, cell phone use, and visitor visitation policies would not include a complex explanation of how the company comports to comply with the exemptions to overtime under the FLSA. Furthermore, this contention is wholly irrelevant to the court's analysis of whether the Hoskins declaration meets the standard set forth in Rule 56(c)(4). The TBC Employee Handbook lacking information about TBC's representative period for the purposes of compliance with Section 7(i) does not disprove Hoskins had personal knowledge of TBC's representative period. To the extent that plaintiffs are suggesting that this is evidence that Hoskins is fabricating her testimony in the Hoskins declaration, the court is unconvinced. Again, plaintiffs provided the court with no evidence that Hoskins was directly asked by plaintiffs what is TBC's representative period for the purposes of compliance with Section 7(i), that she lacked personal knowledge of TBC's representative period for the purposes of compliance with Section 7(i), or that she was being untruthful in her depositions or declarations.

In short, the court finds that Rule 12(f) is not the procedurally proper method to bring a motion to strike for a declaration, and that the Hoskins declarations conform with the requirements set forth in Rule 56(c)(4).

### B. Exclusion for Purposes Submitted

In the alternative, plaintiffs have asked the court not to consider the Hoskins declarations to establish TBC's representative period for the purposes of compliance with Section 7(i) is one year. ECF No. 161 at 4. If plaintiffs are seeking this remedy under the same legal arguments made to have the Hoskins declarations stricken, those arguments fail for the reasons as stated above. The court finds Hoskins relied on her personal knowledge, setting out facts that would be admissible, and showing she is competent to testify on the matters stated in the Hoskins declarations, and that the Hoskins declarations are not pleadings. As such, the Hoskins declarations are not subject to corrective action under Rule 56(c)(4) nor Rule 12(f).

Plaintiffs argue that "this late and sudden disclosure of [TBC's representative period for the purposes of compliance with Section 7(i)] without supporting documentation shows that TBC has not acted in good faith." Id. Plaintiffs contends that because the regulations that apply to Section 7(i) requires TBC to choose "an appropriate representative period or a formula for establishing such a period" and that choice "must be designated and substantiated in the employer's records," 29 C.F.R. § 779.417(d), TBC's failure to disclose any documentation of its representative period for the purposes of compliance with Section 7(i) violated plaintiffs' request for production of any and all

employee handbooks, personnel policies, other documents that related to TBC's compensation policies.[4]  ECF No. 160-2 at 4.

TBC disagrees that such a request "constituted a request for records substantiating the designation of a representative period." ECF No. 162 at 6.  TBC argues compliance with regulations set forth in 29 C.F.R. § 779.417(d) can occur by "being substantiated by its pay plan audit records or other documents."  Id. at 6; see 29 C.F.R. § 516.16(b) ("A copy of the agreement or understanding under which section 7(i) is utilized <u>or, if such agreement or understanding is not in writing</u>, a memorandum summarizing its terms including the basis of compensation, the applicable representative period and the date the agreement was entered into and how long it remains in effect.") (emphasis added). TBC's explanation for never providing its representative period for the purposes of compliance with Section 7(i) or its pay plan audit is because plaintiffs never requested it:

> Plaintiffs have failed to identify any pleading, discovery request, deposition transcript, or other document seeking information regarding Defendant's designation of a representative period under Section 7(i) or its audit practices with regard to the pay plan.  Plaintiffs never conferred with Defendant, never filed a motion to compel under Local Civil Rule 37.01, or otherwise sought from Defendant any information regarding its designated representative period or its audit practices with regard to the pay plan.

Id. at 6–7.  At the hearing, the court requested that plaintiffs produce any documents where plaintiffs requested TBC's pay plan audit records or questioned Hoskins or any

---

[4] Plaintiffs did not ask the court to disregard the Hoskins declarations pursuant to Fed. R. Civ. P. 26 or 37.  Under the Federal Rules, "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Out of an abundance of caution, the court considers this argument.  Nonetheless, for the reasons explained in this order, had the plaintiffs requested relief under Rule 26 or Rule 37, the court would reject such an argument on the merits.

other TBC representative about the representative period specifically.  As discussed above, the excerpts from Hoskins 2019 Depo plaintiffs produced do not constitute asking a direct question about TBC's representative period to Hoskins.  Plaintiffs knew Hoskins was an individual likely have discoverable information about the Section 7(i) exemption and failed to ask her about the representative period in two different depositions.  Such failures have no remedy in this court.  Plaintiffs also provided the court with TBC's expert report performed by Robert Crandall ("Crandall"), which ran analytical models to demonstrate TBC had a bona fide commission plan ("Crandall report"), as further evidence of direct questioning to anyone regarding TBC's representative period or any direct requests for its pay plan audits.  ECF No. 166-2.  As discussed in more detail below, the Crandall report is not evidence of plaintiffs requesting TBC's pay plan audit records, questioning a TBC representative about the representative period specifically, or generally that TBC misrepresented its representative period.  In short, plaintiffs have not provided the court with any evidence that plaintiffs requested that TBC produce any documents or answer any questions about TBC's representative period or pay plan audits.

      Plaintiffs argue that TBC's failure to plead a one-year representative period for the purposes of Section 7(i) entitled plaintiffs' relief in the form of the court excluding the Hoskins declarations for the purposes of establishing TBC's representative period.  ECF No. 161 at 3.  The court assumes plaintiffs base this contention that TBC is required to plead their representative period to meet its burden in proving that it met the requirements in Section 7(i).[5]  TBC asserted Section 7(i) as an affirmative defense to the

---

[5] Plaintiffs did not make such an argument.  Nonetheless, out of an abundance of caution, the court considers this argument.  For the reasons explained in this order, the court would and does reject such an argument on the merits.

violations of the overtime requirements in the FLSA.  ECF No. 167 at 2–3 (quoting ECF No. 6 at 3–6, 9–10).  The Fourth Circuit requires employers asserting an exemption under the FLSA to bear the burden to "prove the application of the exemption by clear and convincing evidence."  Calderon v. GEICO Gen. Ins. Co., 809 F.3d 111, 121 (4th Cir. 2015) (citing Desmond v. PNGI Charles Town Gaming, L.L.C., 564 F.3d 688, 691 n.3 (4th Cir. 2009)); see also Alston v. DIRECTV, Inc., 254 F. Supp. 3d 765, 776 (D.S.C. 2017) (applying clear and convincing evidence standard to employer's assertion of § 207(i) exemption); Schmidt v. Charleston Collision Holdings Corp., 2015 WL 3767436, at *5 (D.S.C. June 17, 2015) (holding a "clear and convincing" standard must be met by employer to prove its assertion of § 207(i) exemption).  Therefore, TBC must show by a clear and convincing evidence it meets the exemption as required by Section 7(i).  Plaintiffs cite to the Crandall report to demonstrate that TBC both misrepresented its representative period and failed to produce information necessary for TBC to meet its burden of proof for its Section 7(i) affirmative defense.

Key to the determination of the issue of whether plaintiffs are entitled to relief because of TBC's failure to disclose its representative period in the Crandall report is subsection (2) of Section 7(i).  29 U.S.C. 207(i)(2).  Subsection (2) of Section 7(i) requires an employer to prove that more than half of its employees' compensation represents commissions for a representative period in order to be exempt from the overtime requirements in § 207(a) of the FLSA.  Id. (emphasis added).  Section 7(i) does not require that an employer prove this by the representative period it utilizes for its bona fide commission plan.  To demand otherwise would require for the court to ignore the plain language meaning of Section 7(i).  Thus, it follows that there is nothing mandating

TBC to disclose its representative period under Section 7(i) in order to meet the clear and convincing standard required.

To the extent that plaintiffs are arguing that the Crandall report's failure to utilize TBC's representative testing during his modeling of the TBC commission plan for the purposes of compliance with Section 7(i) demonstrates bad faith or misrepresentation, the court also rejects this argument. The Crandall report does not claim to utilize TBC's representative period when examining if the TBC commission plan meets the requirements of Section 7(i). ECF No. 166-2. The Crandall report tests several representative periods to argue that under multiple representative periods, the TBC commission plan would be in compliance with Section 7(i).[6] Id. Because subsection (2) of Section 7(i) requires that employers prove that more than half of its employees' compensation represents commissions for a representative period in order to be exempt from the overtime requirements in § 207(a) of the FLSA, and not for its representative period, the Crandall report's testing is appropriate for TBC to use to attempt to meet its burden of proof to prove its Section 7(i) affirmative defense. Therefore, the court finds that TBC was not obligated to disclose its representative period in order to meet its burden of proof that it met the obligations of Section 7(i).[7] As such, the court finds that the Crandall report's failure to utilize TBC's representative period when running his

---

[6] TBC submitted a supplemental report by Crandall which utilized TBC's one-year representative period. ECF No. 159-2.

[7] Nothing in this order should be construed as the court making any determination as to whether TBC has proven by clear and convincing evidence it meets the exemption as required in Section 7(i). This holding demonstrates only that TBC need not disclose its representative period in order to prove by clear and convincing evidence it meets the exemption as required in Section 7(i).

analytical models to demonstrate TBC has a bona fide commission plan does not constitute bad faith, misrepresentation, or breaching a requirement of TBC to disclose its representative period.

In short, all arguments made by plaintiffs and all arguments that plaintiffs could have made to disallow the Hoskins declarations as evidence of TBC's representative period for the purposes of compliance with Section 7(i) fail.  Based on the court's review of the record, the court finds that plaintiffs did not specifically ask Hoskins about the representative period, did not request for production TBC's pay plan audits, and did not make any specific requests from TBC or any TBC's representative regarding TBC's pay plan audits or its representative period for the purposes of compliance with Section 7(i).  The court finds that TBC was under no obligation to disclose its representative period to meet the burden of its affirmative defense and did not misrepresent its representative period in the Crandall report.  The court finds that Rule 12(f) is not the procedurally proper method to disallow a declaration for the purposes of establishing the representative period, and that the Hoskins declarations conform with the requirements set forth in Rule 56(c)(4).  Therefore, the court denies plaintiffs' motion to strike and allows the Hoskins declarations as evidence of TBC's representative period for the purposes of compliance with Section 7(i).

## IV. CONCLUSION

For the reasons set forth above, the court denies the plaintiffs' motion to strike.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**April 8, 2020**
**Charleston, South Carolina**